UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00554-H

DR. JAMES W. LILLARD, PLAINTIFF

V.

UNIVERSITY OF LOUISVILLE, DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Dr. James W. Lillard, Jr. ("Lillard"), brought suit in federal court alleging that his former employer, Defendant University of Louisville ("University"), acted unlawfully related to his employment and termination, as well as the University's post-employment legal pursuits against Lillard. Previously in this action, this Court sustained the University's motion to dismiss nine of Plaintiff's thirteen claims. Lillard now moves to alter, vacate, or amend that Order based on a subsequent state court decision. The motion has merit and for the reasons stated below, the Court will amend its prior order in part.

I.

While the facts are relatively uncomplicated, and at this point undisputed, this case presents a procedurally complicated circumstance. Two state circuit courts presently maintain jurisdiction over a number of Lillard's counterclaims which are similar to the claims he has asserted before this Court and which arise out of the same set of facts. Because of various legal implications of parallel actions filed in state and federal courts, the Court describes the sequence of events comprising this case some in detail.

In late November 2005, the University sent Lillard letters offering Lillard an associate professor position at the University of Louisville School of Medicine. On November 15, 2009, the

University terminated Lillard's employment. On May 25, 2011, the Equal Employment Opportunity Commission ("EEOC") received Lillard's charge for employment discrimination and retaliation against the University. Shortly thereafter, Lillard received a letter from University's counsel demanding a return of office equipment that Lillard had allegedly unlawfully retained after leaving the University. Lillard also received a Notice of Suit Rights from the EEOC regarding his first charge.

After not receiving the purportedly misappropriated office equipment, the University filed suit in Franklin Circuit Court alleging one count each of conversion and embezzlement. On October 4, 2011, Lillard filed the present suit in federal court to protect his rights under the EEOC Notice of Suit Rights. He alleged the following thirteen counts of unlawful activity:

- I. Discrimination and Hostile Work Environment
- II. Fraud, Deceit, Misrepresentation, and Fraudulent Inducement
- III. Breach of Contract
- IV. Breach of Implied Covenant of Good Faith and Fair Dealing
- V. Violation of University Policies and Procedures
- VI. Intentional or Negligent Infliction of Emotional Distress
- VII. Interference with Contractual Relations
- VIII. Retaliatory Discharge
- IX. Retaliation
- X. Defamation
- XI. Due Process
- XII. Malicious Prosecution, Abuse of Process, and Wrongful Use of Civil Proceedings
- XIII. Public Policy Retaliation

On January 13, 2012, Lillard then filed his Answer to the state court Complaint and asserted several counterclaims against the University, each of which is also asserted in the federal Complaint.[1] Lillard explains that he filed the parallel counterclaims in state court due to the state rule for compulsory counterclaims.

---

[1] Lillard asserted eight counterclaims, although one of the counterclaims is mis-numbered such that "Count V" is repeated twice as to two different counts. Not every count in the federal Complaint is also asserted as a state court counterclaim.

2

On April 12, 2012, the EEOC granted Lillard a second Notice of Suit Rights related to the University's ongoing discrimination and retaliation under Title VII of the Civil Rights Act. Shortly thereafter, this Court issued its Order granting the University's motion to dismiss nine of the thirteen federal claims on sovereign immunity grounds with prejudice. After entry of the Order, Counts I, VIII, IX, and XIII remained before this Court.

Subsequently, the Jefferson Circuit Court issued an opinion that an express contract did exist between the University and Lillard. Lillard's current motion is based upon this state court determination, arguing that the Commonwealth waives sovereign immunity upon an express contract. Lillard requests that this Court correct its previous Order to show that those contract-related counts dismissed with prejudice are now dismissed without prejudice, thereby granting leave for the state court to take up and decide these issues.

Federal Rule 59(e) provides parties with the opportunity to move to alter or amend a judgment. This motion is "not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). "Rule 59(e) motions are aimed at *re* consideration, not initial consideration. Thus, parties should not use them to raise arguments which could, and should, have been made before judgment issued. " *Id.* (quoting *FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)). Therefore, a movant presents a viable Rule 59(e) motion by establishing that "there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)(internal citations omitted).

3

II.

This Court's Order, issued July 17, 2012, dismissed Counts II, III, IV, V, VI, VII, X, XI, and XII with prejudice. Lillard's motion to alter, amend or vacate this order relates only to contract-related claims under the theory that although the University is a state, as declared in *Martin v. Univ. of Louisville,* 541 F.2d 1171 (6th Cir. 1976), a state waives its immunity with regard to claims arising out of a contract that a sovereign made with another entity. Lillard argues that this Court implicitly considered the correspondence between Lillard and the University as an implied contract at most in rendering dismissal on sovereign immunity grounds. However, Lillard argues the letters in fact formed an express contract upon which the University waived its sovereign immunity. The state court decision supports Lillard's argument, and this Court agrees.

As an arm of the state, the University "enjoys sovereign immunity except to the extent waived, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Campanella v. Commerce Exch. Bank*, 137 F.3d 885, 890 (6th Cir. 1998)(citation omitted). Kentucky statutory law outlines the scope of its waiver of sovereign immunity based on contractual relations as follows:

> [a]ny person, firm or corporation, having a lawfully authorized written contract with the Commonwealth at the time of or after June 21, 1974, may bring an action against the Commonwealth *on the contract*, including but not limited to actions either for breach of contracts or for enforcement of contracts or for both.

KRS § 45A.245(1)(emphasis added). Thus, the state waives its sovereignty under contracts into which it enters voluntarily.

A.

This begs two questions – whether this contract is one upon which the University has waived its immunity, and which claims fall within the scope of this waiver as "on the contract." The Jefferson Circuit Court answered the first question, concluding that the Kentucky General Assembly "waived sovereign immunity with respect to claims arising out of lawfully authorized written contracts with the Commonwealth. . . . Such is the case in the instant case insofar as the aforementioned offer letter from the University, once accepted by Dr. Lillard and approved by the Board, constitutes a lawfully authorized written contract with the University (i.e. the Commonwealth)." *Univ. of Louisville v. Lillard*, No. 11-CI-05739, slip op. at 3 (Jeff. Cir. Ct., Ky. Aug. 10, 2012).[2]

Turning to the second question, Lillard has brought two types of contract-related claims in his Complaint. First, Lillard alleged two claims that clearly fall under the terms of the contract – Count III (breach of contract) and Count V (violation of University policies and procedures). The breach of contract claim clearly evinces an argument based on the contract, and accordingly the University has waived immunity as to Count III.

Looking at the language of Lillard's claim against the University for violation of its policies and procedures, this claim is either decidedly "on the contract" or not a cognizable claim. If the Court construes the handbooks and manuals outlining the University's operating policies and procedures as part of the contract governing Lillard's employment, either by virtue of the binding nature of the language of the guidebooks or by incorporation through reference in those letters that

---

[2] It is unclear from the Jefferson Circuit Court which letters constitute the express employment contract between the University and Lillard. Although the Court mentions the November 29 and 30, 2011 letters, other correspondence between the parties may be incorporated as part of the employment contract. This Court does not opine on which letters comprise this contract.

5

constitute the employment contract, then violation of those policies are necessarily on the contract.[3] Granting Lillard the benefit of the doubt that the University's policies and procedures are part of the employment contract, the University has waived its immunity as to suit on Count V.

B.

The second type of contract claims Lillard alleges in his Complaint are quasi-contractual claims independent from and irrespective of the actual terms of the contract. These claims include Count II for fraudulent inducement only, Count IV for breach of the implied covenant of good faith and fair dealing, and Count VII for interference with contractual relations. These claims are not "on the contract" as contemplated in KRS § 45A.245(1). Rather these are tort-like claims for which the University did not intend to waive its sovereign immunity, and the University only waives its immunity on claims concerning those contractual provisions it negotiated. However, the University does not waive its immunity over contractual claims arising outside the four corners of the contract, each of which may, under some circumstances, be more appropriately considered torts.

Fraudulent inducement "attends conduct prior to striking the express or implied contract and alleges that one party tricked the other into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Becherer v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 193 F.3d 415, 439 (6th Cir. 1999)(quoting *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996)(holding that because "the facts comprising the fraudulent inducement claim are closely interwoven with those constituting the breach of contract, the economic loss rule bars

---

[3] If the guidebooks and manuals are not part of the express contract, but are part of an implied contract, then the University is protected by sovereign immunity as will be explained in the subsequent paragraphs. If the guidebooks are merely suggestive and non-binding, then the University incurs no liability for violations thereof. Because the contractual claims will be decided by the state court, the question as to what comprises the employment contract is properly under the state's jurisdiction.

the pleading of a separate tort claim")). In entering into a contract, the University has not waived its sovereign immunity for its conduct performed prior to the establishment of the contractual relationship.

The implied covenant of good faith and fair dealing is contained within every contract, "[but], the tort itself arises from a violation of a duty to act in good faith that is imposed by the common law, not by the terms of the contract." *Ennes v. H & R Block E. Tax Servs., Inc.*, 2002 WL 226345, at *2 (W.D. Ky. Jan. 11, 2002). Because this cause of action derives from the common law and does not arise on the contract, the University has not waived its sovereign immunity as to Count IV.

Finally, the Sixth Circuit has determined that "[u]nder Kentucky common law, intentional interference with contractual relations gives rise to a tort action if it is malicious or without justification." *Stratmore v. Goodbody*, 866 F.2d 189, 194 (6th Cir. 1989). As a tort, the University has sovereign immunity over this claim. Even if it were not considered a tort, the elements necessary to prove an interference with contractual relations claim, as outlined in the Restatement (Second) of Torts and adopted by Kentucky law, demonstrate that the facts giving rise to an interference claim are not "on the contract" and therefore outside the scope of the contracts waiver to sovereign immunity. *See CMI, Inc. v. Intoximeters, Inc.*, 918 F.Supp. 1068, 1079 (W.D. Ky. 1995). The elements are:

> (1) the existence of a contract [with a third party]; (2) Defendants' knowledge of this contract; (3) that it intended to cause its breach; (4) its conduct caused the breach; (5) this breach resulted in damages to CMI; and (6) Defendant had no privilege or justification to excuse its conduct.

*Id.* While the University may have waived its immunity in a contract it composed, the University did not waive its immunity over a contract between Lillard and a third party.

7

In sum, this Court will grant Lillard's motion to amend in part, considering the manifest injustice that would result from effectively precluding Lillard from pursuing these claims in the state court. However, the University has not waived its immunity over those quasi-contractual claims that are more tortious in nature and do not arise from the provisions of the contract or the contractual relationship between the University and Lillard.

### III.

It is important to note the effect of the present Order on this lawsuit. First, this Order does not disturb the July 17 Order regarding Count XI, Lillard's due process claim. Insofar as Count XI seeks to hold the University liable under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, sovereign immunity shields the University. However, the previous Order did not discuss Count XI to the extent that Lillard alleges violations of the due process protections afforded in Kentucky's Constitution and statutes. Because Count XI is similarly asserted in the state court action, the Court is now compelled to dismiss Count XI with prejudice as it concerns the Fourteenth Amendment, and dismiss Count XI without prejudice insofar as it alleges Kentucky constitutional and statutory violations for further proceedings in state court.

Second, the University did not include Counts I, VIII, IX, and XIV[4] in its motion to dismiss. As these involve federal statutory claims, this Court maintains jurisdiction over these Counts. Third, the present decision does not affect the Court's prior opinion as to Count XIII, Lillard's public policy retaliation assertion. Accordingly, this claim remains before this Court.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff Dr. James Lillard's motion to alter, amend, or

---

[4] Count XIV has been added to Lillard's Complaint since the University filed its motion to dismiss.

vacate this Court's previous Order is SUSTAINED IN PART and DENIED IN PART, and

(1) The following claims are DISMISSED WITHOUT PREJUDICE for state court resolution:  Count III – Breach of Contract; Count V – Violation of University Policies and Procedures; and Count XI – Due Process, as it relates to Kentucky constitutional and statutory laws.

(2) The following claims are DISMISSED WITH PREJUDICE: Count II – Fraud, Deceit, Misrepresentation, and Fraudulent Inducement; Count IV – Breach of Implied Covenant of Good Faith and Fair Dealing; Count VI – Intentional or Negligent Infliction of Emotional Distress; Count VII – Interference with Contractual Relations; Count X – Defamation; Count XI – Due Process, relating to the Fourteenth Amendment; and Count XII – Malicious Prosecution, Abuse of Process, and Wrongful Use of Civil Proceedings, and

(3) The following claims remain before this Court:  Count I – Discrimination and Hostile Work Environment; Count VIII – Retaliatory Discharge; Count IX – Retaliation; Count XIII – Public Policy Retaliation; and Count XIV – Ongoing Discrimination and Retaliation.

cc:   Counsel of Record