UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

JAMES W. LILLARD,

       Plaintiff,

v.                                   CASE NO. 3:11-CV-554-DJH

UNIVERSITY OF LOUISVILLE,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Before the Court is a "Motion to Modify Order" ("Motion to Modify") (DN 147) filed by defendant University of Louisville ("UofL") on April 17, 2015. Plaintiff Dr. James W. Lillard ("Dr. Lillard") filed a response on May 1, 2015. UofL filed a reply on May 8, 2015. Therefore, the Motion to Modify is ripe for review.

**I.     BACKGROUND**

The parties in this matter have been embroiled in a discovery dispute regarding allegations of spoliation. (*See* DN 120, 122, 125, 129, 131, 132, 133, 137, 138.) On January 15, 2015, this matter was referred to the undersigned Magistrate Judge ("the Court") for disposition of all pending and further discovery disputes and discovery motions. (DN 137.) To facilitate a thorough discussion of the discovery issues, the Court held a conference on February 2, 2015. The conference was attended by counsel for both parties and numerous UofL employees. During the conference, there was a discussion regarding the storage of electronically-stored information ("ESI") and paper documents at UofL.

1

As a result of the conference, on March 3, 2015, the Court ordered UofL to search various locations at UofL for ESI and paper documents and produce the non-privileged results of those searches by April 10, 2015.  (DN 143 ["March 3 Order"].)  On April 7, 2015, the Court extended UofL's deadline to comply with the March 3 Order to May 29, 2015 with the exception of the files and files servers that would be the subject of UofL's to-be filed Motion to Modify.  (*See* DN 151 [recounting history of Motion to Modify]).  The UofL filed the Motion to Modify on April 17, 2015.

In the Motion to Modify, UofL asks the Court to modify the March 3 Order to exclude from search and production the following items:  (1) file servers maintained by the James Graham Brown Cancer Center ("BCC"); (2) certain paper documents possessed by BCC; and (3) paper and electronically-stored documents possessed or controlled by the Office of Technology Transfer ("OTT").  The Court will address each category and the parties' arguments with respect to each below.

## II.    ANALYSIS

As an initial matter, the Court notes that its information is only as good as what the parties present to it.  In its Motion to Modify and supporting memoranda, UofL does not substantiate its assertions about what the various categories of file servers and electronic and hard-copy documents contain with any affidavit or other testimony.  Given the intensity of the discussions—including some comments by the Court—regarding UofL's previous shortcomings related to discovery in this case, the Court assumes that UofL and its counsel are especially sensitive to the need for candor and completeness.  Furthermore, Rule 11 of the Federal Rules of Civil Procedure states that "[b]y presenting to the court a . . . written motion . . . an attorney . . .

certifies that to the best of the person's knowledge, information, and belief . . . the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3). In light of the aforementioned discussions regarding discovery, the Court assumes that Rule 11 has been followed.

Dr. Lillard's Response is likewise less illuminating than it could have been. Dr. Lillard failed to specifically state why any particular file server or category of electronic or hard copy documents is likely to contain relevant information. For example, UofL has identified BCC's file server BACKBLAZE as one that should be excluded from the March 3 Order, claiming that it was purchased after Dr. Lillard's employment at UofL and that it is used solely for research performed by Dr. John Trent. Rather than arguing that Dr. Trent or the file server he uses is likely to contain relevant information, Dr. Lillard attacks UofL's assertion that a search of the file servers is too cumbersome. Dr. Lillard misses the point – relevancy must first be established before the Court turns to whether a search would be too cumbersome. As a result, the Court is left guessing as to whether a potential file server contains relevant information. Certainly the Court should not have to guess or comb through the multiple filings in this matter to determine whether Dr. Trent or his file server *may* have potentially relevant information. Dr. Lillard appears to be arguing he is entitled to a search of everything, failing to concede that *any* category is not relevant. This is an unreasonable position in light of the identification of certain file servers and electronic and hard copy documents that clearly—in the Court's estimation—have no relevancy to Dr. Lillard's claims.

Although discovery is proceeding in an unusual manner in this case, it is nonetheless governed by the Federal Rules of Civil Procedure. Rule 26(b)(1) of the Federal Rules of Civil

Procedure states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at trial if the discovery appears *reasonably calculated* to lead to the discovery of admissible evidence." *Id*. (emphasis added). "On motion or on its own, the court must limit the frequency of extent of discovery . . . if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

The Court has broad discretion to determine the scope of discovery. *Chrysler Corp. v. Fedders Corp*., 643 F.2d 1229, 1240 (6th Cir. 1981). Absent an abuse of discretion, the Court's decision will not be disturbed on review. *Chemical & Industry Corp. v. Druffel*, 301 F.2d 126, 129 (6th Cir. 1962). Once the relevancy of requested information or documents is established, the Court must determine whether the reasons offered by the responding party for excluding these items from disclosure are justified. *Invesco Institutional (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). If the relevancy of a particular discovery request in dispute is not apparent on its face, however, the party seeking discovery has the burden of establishing relevancy. *Transcor, Inc. v. Furnia Charters, Inc*. 212 F.R.D. 588, 591 (D. Kan. 2003). The thought behind this common sense principle is that, while the relevancy standard may be a liberal

one, it is not a license to go fishing with the hope that something might be discovered.  *See Southard v. State Farm Fire and Cas. Co*., 2012 WL 2191651, at *2 (S.D. Ga. June 14, 2012) ("But the relevancy standard for discovery is not the same as for at-trial evidence. For discovery it is more liberal, though not a fishing license.").

To determine what may be relevant, the Court must necessarily examine the legal and factual bases of Dr. Lillard's lawsuit.  Dr. Lillard's lawsuit is based on race discrimination and retaliation, both during and after his employment.  Specifically, Dr. Lillard asserts claims for (1) Discrimination / Hostile Work Environment; (2) Retaliatory Constructive Discharge; (3) Retaliation; (4) Public Policy Retaliation; and (5) Ongoing Discrimination and Retaliation.  (DN 1; DN 44 [amendment to complaint]; *see also* DN 45 [order dismissing some claims in the complaint and reciting the remaining claims in the action].)  The basic facts underlying those claims are as follows.  Dr. Lillard, an African-American male, was employed by UofL from March 1, 2006 to November 15, 2009 as an associate professor.  (DN 1, p. 3.)  Dr. Lillard alleges that he was constructively discharged from his employment at UofL.  Dr. Lillard further alleges that he was treated differently from similarly-situated Caucasian or non-African American employees and subject to a hostile working environment while employed at UofL due to his race. (*Id*. at 4.)  Some examples of the alleged disparate treatment and hostile working environment include: denial of laboratory and office space; denial of reimbursement for moving expenses; lack of administrative support; reduction in the amount of an endowment that was used to entice Dr. Lillard to accept the position at UofL; failure to follow the agreed-upon terms and conditions associated with the endowment; refusal to allow Dr. Lillard to engage in certain types of investigative research opportunities; refusal to properly investigate Dr. Lillard's complaints and

concerns about disparate treatment; racially-charged comments; and manipulation of development awards. (*Id*. at 4.) Dr. Lillard also alleges retaliation due to engaging in protected activities and based on UofL filing a civil suit against him in state court for the return of two computers purchased by Dr. Lillard while at UofL. (*Id*. at 18; DN 44, p. 2; *see also* DN 10-1 [complaint filed by UofL in Jefferson County Circuit Court].)

### A. BCC File Servers

UofL has identified the file servers that are maintained by BCC and requests that they be excluded from the search mandated by the March 3 Order. Generally, UofL argues that the benefit of searching BCC's file servers is outweighed by the amount of manpower, time, and expense that it would take to conduct the searches.[1] (DN 147-1, p. 9.) Furthermore, UofL argues that none of BCC file servers is likely to contain any information relevant to Dr. Lillard's claims or that will not be otherwise produced as part of a separate search. (*Id*.)

Dr. Lillard does not take issue with the specific file servers identified by UofL. Instead, Dr. Lillard argues generally that UofL's reasons for requesting modification of the March 3 Order are not supported by any expert evidence or any evidence at all. (DN 150, pp. 3-4.) Dr. Lillard further argues that UofL has provided no information with respect to the predecessors of the file servers that are identified in the Motion to Modify. (*Id*. at 4.) Dr. Lillard is also concerned about the tracking of information on the servers, specifically whether predecessor servers or former uses of a current server were used to store data and information relevant to Dr. Lillard's claims. (*Id*.) Finally, Dr. Lillard appears to be arguing that conducting some of the

---

[1] UofL's arguments with respect to specific file servers will be incorporated into the Court's discussion of same.

searches would not be as burdensome as UofL claims.  (*See id*. at 4-5.)  The Court will address each file server below.

1. **BCC-WINDEPLOY**.  UofL asserts that this file server is used to set up all new computers at BCC and was purchased on April 16, 2013, that it pushes operating systems onto new computers and deploys third-party applications to new computers, and that it holds approximately 280 GB of data.  The Court finds that, given the factual allegations in this case, it is highly unlikely that BCC-WINDEPLOY contains any relevant information.  Dr. Lillard has made no specific argument otherwise.  Therefore, BCC-WINDEPLOY is excluded from the search mandated by the March 3 Order.

2. **BCCAPERIO**.  UofL maintains that this file server was originally purchased by BCC on June 13, 2008 at the request of Dr. Lillard and was used to store research images created by an Aperio Scanscope.  Upon the end of Dr. Lillard's employment with UofL, UofL claims that BCCAPERIO was used as a backup for data folders on the C:drives of lab computers.  UofL further claims that BCCAPERIO was used for this purpose until UofL purchased two other file servers (BCCNAS and BCCNAS1) for that purpose.  Currently, BCCAPERIO is said to contain two drive arrays:  (1) one that contains more than 6 TB of scanned slide images and the automated backup data of BCC lab computers created after Dr. Lillard's departure from UofL and until BCC purchased the two new file servers; and (2) one which stores data created by Dr. Albert Cunningham after Dr. Lillard's departure from UofL.

The Court finds that, given the allegations in this case, it is unlikely that any relevant information will be found on BCCAPERIO.  Even though Dr. Lillard utilized this file server during his employment, it was apparently only to store images related to his cancer research.  Dr.

Lillard has made no argument that this specific file server may contain relevant information, or that the C:drives of BCC lab computers should be included in the search. *See Transcor, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003) ("[W]hen relevancy is not apparent on the face of the request, the party seeking the discovery has the burden to show the relevancy of the request."). Furthermore, array (1) contains 9.7 TB of data and array (2) contains 6.8 TB of data. Because there is a small chance that BCCAPERIO contains relevant information and the amount of data is so large, the Court finds that the cost of searching BCCAPERIO outweighs the benefit of doing so. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); *In re Great Lakes Factors, Inc.*, 331 B.R. 347, 352 (Bankr. N.D. Ohio 2005) ("[T]he Court finds that, while not necessarily irrelevant, the Plaintiffs' discovery requests regarding the Business Manager Program are both overbroad and burdensome, and therefore should be restricted."). Therefore, BCCCAPERIO is excluded from the search mandated by the March 3 Order.

   3. **BCCWAT**. UofL asserts that this file server is used by BCC's web application developer as a test box for new web applications at BCC. According to UofL, BCCWAT was purchased on August 26, 2013, after Dr. Lillard left UofL, and holds approximately 68 GB of data. The Court finds that, given the factual allegations in this case, it is highly unlikely BCCWAT contains any relevant information. Dr. Lillard has made no specific argument otherwise. Therefore, BCCWAT is excluded from the search mandated by the March 3 Order.

   4. **BCCWEBAPPS**. UofL maintains that this file server is used by BCC's web application developer as a production box for fully tested web applications. According to UofL, BCCWEBAPPS was purchased on February 18, 2014, after Dr. Lillard left UofL, and holds approximately 56 GB of data. The Court finds that, given the factual allegations in this case, it

is highly unlikely that BCCWEBAPPS contains any relevant information.  Dr. Lillard has made no specific argument otherwise.  Therefore, BCCWEBAPPS is excluded from the search mandated by the March 3 Order.

5. **BCCTECH**.  Per UofL, this file server is used by BCC researchers to send secure documents to each other as part of BCC's secure file transfer protocol.  UofL asserts that BCC purchased BCCTECH on October 1, 2013, after Dr. Lillard left UofL's employment, and that BCCTECH contains about 91 GB of data.  Although this particular server was purchased after Dr. Lillard left UofL, it is unclear whether the secure documents might include relevant information or communications created during Dr. Lillard's employment at UofL, or whether it includes information or communications relevant to the Dr. Lillard's claims that were created after he left UofL's employment.  Therefore, UofL is directed to include BCCTECH in the search mandated by the March 3 Order.

6. **BCC-MSOTSERVER**.  UofL claims that this file server is used by BCC researchers to store scanned animal images and contains about 2 TB of data.  UofL maintains that BCC-MSOTSERVER was purchased on January 2, 2013, after Dr. Lillard left UofL's employment.  The Court finds that, given the factual allegations in this case, it is highly unlikely that BCC-MSOTSERVER contains any relevant information.  Dr. Lillard has made no specific argument otherwise.  Therefore, BCC-MSOTSERVER should be excluded from the search mandated by the March 3 Order.

7. **BCC-BCCFP1**.  UofL asserts that this file server was purchased on May 16, 2006 and is used by BCC to store tissue information for cancer patients.  According to UofL, it contains approximately 131 GB of data.  The Court finds that, given the factual allegations in

this case, it is highly unlikely BCC-BCCFP1 contains any relevant information.  Dr. Lillard has made no specific argument otherwise.  Therefore, BCC-BCCFP1 should be excluded from the search mandated by the March 3 Order.

8.     **BACKBLAZE**.  UofL states that this file server runs on a Linux operating system and is used solely for research performed by Dr. John Trent.  Per UofL, it was purchased on June 6, 2012, after Dr. Lillard left UofL's employment.  The Court finds that, given the factual allegations in this case, it is highly unlikely that BACKBLAZE contains any relevant information.  Because the relevancy of the information on this file server is not apparent, and because Dr. Lillard has made no specific argument that Dr. Trent or his file server has information relevant to his claims, BACKBLAZE should be excluded from the search mandated by the March 3 Order.

9.     **INTERGY**.  UofL maintains that this file server was originally used for billing associated with BCC's microarray laboratory.  According to UofL, it is currently being used as the billing server for the dental oncology group at BCC.  UofL further asserts that it holds approximately 128 GB of data.  The Court finds that, given the factual allegations in this case, it is highly unlikely INTERGY contains any relevant information.  Dr. Lillard has made no specific argument otherwise.  Therefore, INTERGY should be excluded from search mandated by the March 3 Order.

10.    **BCCNAS**.  UofL states that this file server was purchased by BCC on June 7, 2013 to replace the weekly backup server capabilities originally performed by BCCAPERIO, presumably, in part, backup of the C:drives of lab computers.  UofL asserts that this file server currently serves as the passive backup system for BCC.  UofL further asserts that the data

originally housed on this sever was copied to BCC's current backup file server, BCCFILE1.  Per Uof L, it holds approximately 6.8 TB of information.

UofL states that there is a small chance that there may be information relevant to Dr. Lillard's claims on BCCNAS.  However, the likelihood of finding any relevant information on BCCNAS other than what will be produced from a search of BCC's I:drive, faculty H:drives, faculty  hard drives, and hard-copy files is very small.  (*See* DN 147-1, p. 10.)  Thus, a search of it might be duplicative.  Finally, UofL estimates that the export process alone may take one week if conducted by UofL.  (*Id.*)

Generally, the party responding to a discovery request bears the cost of compliance. *Medtronic Sofamor Danek, Inc. v. Michelson*, 229 F.R.D. 550, 553 (W.D. Tenn. 2003). Nonetheless, a court may shift some or all of the cost of production to the requesting party to protect the responding party from undue burden or expense.  *Rowe Entertainment, Inc. v. William Morris Agency, Inc*., 205 F.R.D. 421, 428 (S.D.N.Y. 2002).  Undue burden is decided on a case-by-case basis. *Medtronic Sofamor Danek, Inc*., 229 F.R.D. at 553.

The Court finds that BCCNAS holds an extremely large amount of data.  The Court further finds that, based on the information before it, there is a very small chance that any information relevant to Dr. Lillard's claims is housed on BCCNAS that cannot be retrieved in a more convenient, less burdensome, and less expensive way.  Upon consideration of these factors, including the week estimated to merely export data from BCCNAS, the Court needs more information to make a decision.  Dr. Lillard should first show "good cause" for a search of BCCNAS and then indicate whether he would be willing to bear the cost of any search of BCCNAS.  *See* Comments to 2006 Amendments to Fed. R. Civ. P. 26(b)(2) (providing for cost-

shifting to requesting party) ("Once it is shown that a source of electronically stored information is not reasonably accessible, the requesting party may still obtain discovery by showing good cause . . . ."). Dr. Lillard is therefore ordered to (1) show good cause as to why a search of BCCNAS should be conducted; and (2) indicate whether he would be willing to pay for a search of BCCNAS.

11. **BCCNAS1**. UofL claims that this file server was purchased by BCC along with BCCNAS on June 7, 2013. According to UofL, this file server is the backup for BCCWAT, BCCWEBAPPS, BCCTECH, BCC-BCCFP1, BCC-CNGSAFE1, and BCCFILE1, and holds approximately about 6.6 TB of data. The Court finds that, given the factual allegations in this case, it is highly unlikely BCCNAS1 contains any relevant information beyond what has been discussed with respect to the file servers for which it serves as backup. Furthermore, the likelihood of finding any relevant information on BCCNAS other than what will be produced from a search of BCC's I:drive, faculty H:drives, faculty hard drives, and hard-copy files is very small. (*See* DN 147-1, p. 10.) Thus, a search of it would be largely duplicative. Dr. Lillard has made no specific argument otherwise. Therefore, BCCNAS1 should be excluded from the search mandated by the March 3 Order.

12. **BCCFILE1**. Per UofL, this file server is used as BCC's primary file server and was purchased by BCC on October 15, 2014, after Dr. Lillard left UofL. UofL claims that it contains information originally housed on the BCCNAS file server and contains about 2.8 TB data.

UofL states that there is a small chance there may be information relevant to Dr. Lillard's claims on BCCFILE1. The likelihood of finding any relevant information on BCCNAS other

12

than what will be produced from a search of BCC's I:drive, faculty H:drives, faculty hard drives, and hard-copy files, however, is very small.  (*See* DN 147-1, p. 10.)  Thus, a search of may be largely duplicative.  Finally, UofL estimates that the export process alone may take one week if conducted by UofL.  (*Id.*)

The Court will not repeat the law set forth in its analysis regarding BCCNAS; however, that law is applicable here.  The Court finds that there is a large amount of data housed on BCCFILE1.  The Court further finds that, based on the information before it, there is a very small chance that any information relevant to Dr. Lillard's claims is housed on BCCFILE1 that cannot be retrieved in a more convenient, less burdensome, and less expensive way.  Upon consideration of these factors, including the week estimated to simply export the data from BCCFILE1, the Court needs more information to make a decision.  Dr. Lillard should first show "good cause" for a search of BCCFILE1 and then indicate whether he would be filling to bear the cost of any search of BCCFILE1.  *See* Comments to 2006 Amendments to Fed. R. Civ. P. 26(b)(2) (providing for cost-shifting to requesting party) ("Once it is shown that a source of electronically stored information is not reasonably accessible, the requesting party may still obtain discovery by showing good cause . . . .").

Dr. Lillard is therefore ordered to (1) show good cause as to why a search of BCCFILE1 should be conducted; and (2) indicate whether he would be willing to pay for a search of BCCFILE1.

13.     **BCC-CNGSAFE1**.  UofL maintains that this file server houses documents from BCC's SAFE document imaging system.  UofL states that it *may* include files maintained by BCC's human resources office.  UofL estimates that there is approximately 713 GB of data on

this server.  UofL states that there is a small chance there may be information relevant to Dr. Lillard's claims on BCC-CNGSAFE1 and that it is likely available through other means.  (DN 147-1, p. 10.)  UofL estimates that it would take a week simply to export the contents of BCC-CNGSAFE1.  (*Id.*)

The Court will not repeat the law set forth in its analysis regarding BCCNAS; however, that law is applicable here.  The Court finds that there is a large amount of data housed on BCC-CNGSAFE1.  The Court further finds that, based on the information before it, there is a very small chance that any information relevant to Dr. Lillard's claims is housed on BCC-CNGSAFE1 that cannot be retrieved in a more convenient, less burdensome, and less expensive way.  Upon consideration of these factors, including the week estimated to simply export the data from BCC-CNGSAFE1, the Court needs more information to make a decision.  Dr. Lillard should first show "good cause" for a search of BCC-CNGSAFE1 and then indicate whether he could be willing to bear the cost of any search of BCC-CNGSAFE1.  *See* Comments to 2006 Amendments to Fed. R. Civ. P. 26(b)(2) (providing for cost-shifting to requesting party) ("Once it is shown that a source of electronically stored information is not reasonably accessible, the requesting party may still obtain discovery by showing good cause . . . .").

Dr. Lillard is therefore ordered to (1) show good cause as to why a search of BCC-CNGSAFE1 should be conducted; and (2) indicate whether he would be willing to pay for a search of BCC-CNGSAFE1.

14.    **APEASY SERVER**.  UofL asserts that this server is retired.  According to UofL, this server hosted an application called APEasy that was used solely by the former flow cytometry lab at BCC.   UofL claims that no new data has been incorporated onto this server.

14

The Court finds that, given the factual allegations in this case, it is highly unlikely APEASY contains any relevant information.  Dr. Lillard has made no specific argument otherwise. Therefore, APEASY SERVER should be excluded from the search mandated by the March 3 Order.

15.    **TEST SERVER**.  Per UofL, this server is retired.  UofL states that this server was originally purchased to act as a terminal server so that Mac users could access specific websites/applications that would only run on Windows computers.   According to UofL, it contains no new data, although BCC's information technology employees occasionally use it as a test bed for IT projects.  The Court finds that, given the factual allegations in this case, it is highly unlikely TEST SERVER contains any relevant information.  Dr. Lillard has made no specific argument otherwise.  Therefore, TEST SERVER should be excluded from the search mandated by the March 3 Order.

**B.    Paper Documents Controlled by BCC**

UofL states that, out of an abundance of caution, it has identified certain categories of documents, including accounting documents, grant documents, and research publications.  (DN 147-1, p. 11.)  UofL argues that these documents are not relevant to Dr. Lillard's claims and/or can be found in another location.  *Id*.  Thus, UofL argues that the burden of reviewing and producing these documents compels the exclusion of them from a search.  *Id*.  UofL further argues that Dr. Lillard has not suggested that any of his grant proposals, his co-workers' grant proposals, monthly account statements, reconciliations, order forms, pro-card reconciliations, packing slips, and travel request forms, other than those to be produced again, have any

relevance to his claims for race discrimination and retaliation. *Id.* UofL does not specifically identify what documents have already been produced and are to be produced again.

Dr. Lillard argues that these items are relevant because Dr. Lillard has sued UofL for retaliation based on "falsification of claims against Dr. Lillard, accusing him of theft, embezzlement, and fraud, arising out of grants, grant budgets, and receipts . . . ." (DN 150, p. 5.) Dr. Lillard also claims that UofL has withheld packing slips, receipts, grant budgets and reconciliations related to the purportedly stolen computers. (*Id.*) Dr. Lillard further argues that the manner in which all of his grants and the computers at issue were handled by UofL is relevant. (*Id.*) The Court will address each category in turn.

1.      **Grant Documents**. UofL states that this category includes full grant proposals for all grants submitted by Dr. Lillard while employed at UofL, including budgets, award notices, post-award modifications, and closeout documents. UofL argues that each grant proposal could contain several hundred pages. The Court finds that grant documents related to the purchase of the two computers that form the basis of Dr. Lillard's retaliation claim are relevant. (*See* DN 44, pp. 1-2; DN 150, p. 5.) Therefore, UofL is ordered to produce, or re-produce, any grant documents that fall into this category.

2.      **Grant Proposals Submitted by Faculty Other Than Dr. Lillard**. UofL states that this category of documents consists of grant proposals for which Dr. Lillard was either a co-investigator or co-principal investigator. UofL argues that, to find these documents, BCC employees would have to search through every grant proposal submitted during Dr. Lillard's tenure at UofL to determine whether he was included as part of the key personnel. Dr. Lillard has not specified why grant proposals submitted by faculty other than Dr. Lillard are relevant to

16

his claims unless those grant proposals relate to the purchase of the two computers at issue.  (*See* DN 44, pp. 1-2; DN 150, p. 5.)  Therefore, the Court finds that this category of documents should be excluded from the search mandated by the March 3 Order, although if any of the documents in this category relate to the purchase of the two computers at issue, they should be produced by UofL.

3. **Accounting Documents**.  UofL states that this category of documents consists of information for each UofL speedtype related to Dr. Lillard's grants and the Gibson Chair.  Per UofL, it consists of monthly account statements, reconciliations, order forms, pro-card reconciliations, packing slips, and travel request forms.  UofL claims that this category also includes all payroll documents and effort reports.  Dr. Lillard has not specified why documents in this category – other than those related to the two computers – should be produced.  (*See* DN 150, p. 5.)  And, it does not appear that, based on Dr. Lillard's allegations in the complaint, as amended, these documents would contain relevant information.  Therefore, the Court finds that, to the extent any documents in this category relate to the two computers at issue, they should be produced.

4. **Personal File and Administrative Files**.  UofL states that documents in this category have already been produced by UofL.  According to UofL, this category includes human resources documents, documents related to UofL's participation in the National Institute of Health's investigation of spending on Dr. Lillard's grants, and hundreds of duplicate accounting and grant-related documents.  Because UofL states that relevant documents in this category have already been produced and will be produced again pursuant to the March 3 Order,

the Court find there is no reason for this search to be excluded.  Consequently, the UofL is ordered to produce, or re-produce, the relevant documents in this category.

     5.    **Reprints and Publications**.  According to UofL, this category includes scientific publications that Dr. Lillard either produced or participated in producing.  The Court finds that, given the factual allegations in this case, it is highly unlikely this category of documents contains any relevant information.  Dr. Lillard has made no specific argument otherwise.  Therefore, this category of documents is excluded from the search mandated by the March 3 Order.

     6.    **Phone / Contact Lists**.  Per UofL, this category consists of correspondence to cancer patients which includes synposes of BCC faculty members.  UofL believes there may be lists in its possession that identify Dr. Lillard as a member of BCC's tumor immunobiology program.  The Court finds that, given the factual allegations in this case, it is highly unlikely this category of documents contains any relevant information.  Dr. Lillard has made no specific argument otherwise.  Therefore, this category of documents is excluded from the search mandated by the March 3 Order.

     **C.**    **Paper and Electronically-Stored Documents Controlled by the OTT**

Dr. Lillard claims that the OTT's "'core mission,' i.e., the transfer of materials, data sharing, and information is directly at issue in the transfer of the computers, and other materials to Morehouse College of Medicine, completely controlled and overseen by the University of Louisville."  (DN 150, p. 6.)  Dr. Lillard also claims that he "has long been demanding documentation related to the transfer of information, data, and documentation to Morehouse."  (*Id*.)

UofL argues that Dr. Lillard's description of the OTT is not accurate.  (DN 152, p. 8-9.) UofL states that the OTT is responsible for facilitating the commercialization of University innovations.  (*Id*. at 9.)  UofL further argues that Dr. Lillard has never identified the OTT or any of its employees as having information relevant to his allegations and that the OTT does not possess any documents related to the transfer of equipment to Dr. Lillard's current employer, Morehouse School of Medicine.  (*Id*.)  Finally, UofL argues that production of some of the documents in this category would require ensuring compliance with the various MTAs and NDAs governing them.  (*Id*.)

1.     **Hard-Copy Disclosure Files**.  According to UofL, a faculty member who wishes to patent an invention or receive a copyright is directed by the OTT to submit a research disclosure that describes the invention or copyright along with supporting documentation.  UofL states that the disclosure file also includes patent applications, correspondence between OTT employees and outside patent counsel, review notes, and invoices, among other documents. UofL further states that it is aware of at least four files that fall into this category.  The Court finds that, given the factual allegations in this case, as well as UofL's assertion that this category does not include documents related to the transfer of equipment from UofL to Dr. Lillard's current employer, this category of documents does not contain any relevant information.  (*See* DN 152, p. 9.)  Therefore, this category of documents is excluded from the search mandated by the March 3 Order.

2.     **Hard-Copy Agreement Files**.  Per UofL, agreement files contain documents that supported Dr. Lillard's research or commercialization efforts. UofL states that these files include material transfer agreements ("MTAs") and non-disclosure agreements ("NDAs") with third-

party private entities and research institutions which agreed to support Dr. Lillard's research and UofL. UofL maintains that these files may also include descriptions of proprietary materials produced by UofL or private companies. UofL claims that there are at least thirteen files in this category. The Court finds that, given the factual allegations in this case, as well as UofL's assertion that this category does not include documents related to the transfer of equipment from UofL to Dr. Lillard's current employer, this category of documents does not contain any relevant information. Therefore, this category of documents is excluded from the search mandated by the March 3 Order.

3.      **Electronically-Stored Disclosure Files**. UofL states that the documents in this category are stored on the OTT's file server and contain patent applications, review notes, published papers, and privileged correspondence between OTT employees and outside patent counsel. UofL further states that these files may contain draft documents that were not finalized and printed. UofL claims that there are at least five files in this category. The Court finds that, given the factual allegations in this case, as well as UofL's assertion that this category does not include documents related to the transfer of equipment from UofL to Dr. Lillard's current employer, this category of documents does not contain any relevant information. Therefore, this category of documents is excluded from the search mandated by the March 3 Order.

4.      **Electronically-Stored Agreement Files**. UofL states that documents in this category consist of the same type of materials as the hard-copy counterparts, including MTAs, NDAs, proprietary material descriptions, and privileged correspondence between OTT employees and outside patent counsel. UofL further states that there are at least thirteen files that fall into this category. The Court finds that, given the factual allegations in this case, as well

20

as UofL's assertion that this category does not include documents related to the transfer of equipment from UofL to Dr. Lillard's current employer, this category of documents does not contain any relevant information.  Therefore, this category of documents is excluded from the search mandated by the March 3 Order.

Accordingly, it is **ORDERED**:

**With respect to BCC file servers, the March 3 Order is modified as follows:**

**BCC-WINDEPLOY** is excluded from the search mandated by the March 3 Order.

**BCCAPERIO** is excluded from the search mandated by the March 3 Order.

**BCCWAT** is excluded from the search mandated by the March 3 Order.

**BCCWEBAPPS** is excluded from the search mandated by the March 3 Order.

**BCCTECH**.  UofL is ordered to search BCCTECH for relevant information by July 15, 2015.

**BCC-MSOTSERVER** is excluded from the search mandated by the March 3 Order.

**BCC-BCCFP1** is excluded from the search mandated by the March 3 Order.

**BACKBLAZE** is excluded from the search mandated by the March 3 Order.

**INTERGY** is excluded from the search mandated by the March 3 Order.

**BCCNAS**.  Dr. Lillard is ordered to (1) show good cause as to why a search of BCCNAS should be conducted; and (2) indicate whether he would be willing to pay for a search of BCCNAS by July 15, 2015.

**BCCNAS1** is excluded from the search mandated by the March 3 Order.

**BCCFILE1**.  Dr. Lillard is ordered to (1) show good cause as to why a search of BCCFILE1 should be conducted; and (2) indicate whether he would he be willing to pay for a search of BCCFILE1 by July 15, 2015.

**BCC-CNGSAFE1**.  Dr. Lillard is ordered to (1) show good cause as to why a search of BCC-CNGSAFE1 should be conducted; and (2) indicate whether he would be willing to pay for a search of BCC-CNGSAFE1 by July 15, 2015.

**APEASY SERVER** is excluded from the search mandated by the March 3 Order.

**TEST SERVER** is excluded from the search mandated by the March 3 Order.

**With respect to BCC documents, the March 3 Order is modified as follows:**

**Grant Documents**.  UofL is ordered to produce, or re-produce, any grant documents that relate to the purchase of the two computers at issue in this matter by July 15, 2015.

**Grant Proposals Submitted by Faculty Other Than Dr. Lillard**.  UofL is ordered to produce any documents in this category related to the purchase of the two computers at issue in this matter by July 15, 2015.

**Accounting Documents**.  UofL is ordered to produce any documents in this category related to the purchase of the two computers at issue in this matter by July 15, 2015.

**Personal File and Administrative Files**.  UofL is ordered to produce, or re-produce, any relevant documents in this category by July 15, 2015.

**Reprints and Publications**.  This category is excluded from the search mandated by the March 3 Order.

**Phone / Contact Lists**.  This category is excluded from the search mandated by the March 3 Order.

**With respect to the OTT documents, the March 3 Order is modified as follows:**

**Hard-Copy Disclosure Files**.  This category is excluded from the search mandated by the March 3 Order.

**Hard-Copy Agreement Files**.  This category is excluded from the search mandated by the March 3 Order.

**Electronically-Stored Disclosure Files**.  This category is excluded from the search mandated by the March 3 Order.

**Electronically-Stored Agreement Files**.  This category is excluded from the search mandated by the March 3 Order.

cc:  Counsel of record